IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


```
------------------------------------------------  .
JUDI PATRIZI,                                     :   CASE NO.  1:09 CV 2830
                                                  :
                                    Plaintiff  :
                                                  :   MEMORANDUM OF OPINION AND
                        -vs-                       :   ORDER DENYING DEFENDANTS'
                                                  :   MOTION FOR SUMMARY
                                                  :   JUDGMENT
SCOTT W. HUFF, et al.,                            :
                                                  :
                                  Defendants.  :
------------------------------------------------
```


UNITED STATES DISTRICT JUDGE LESLEY WELLS


        This case arose when defendants Scott Huff and Thomas Connole of the City of

Cleveland Police Department arrested plaintiff Judi Patrizi on charges of obstructing

official business during an early morning police investigation.  As a result of this arrest,

Ms. Patrizi filed a three-count complaint against the above-named defendants.  The

first count of the complaint alleges violations pursuant to 28 U.S.C. § 1983 and the

Fourth Amendment.  The second and third counts of the complaint alleged false arrest

and malicious prosecution, respectively.  (Doc. 1).  Ms. Patrizi has since dismissed

these latter two state law claims.  (Doc. 12).

        On 2 December 2010, the defendants filed a motion for summary judgment on

the remaining Section 1983 claim, contending that Ms. Patrizi's arrest was objectively

reasonable in light of the circumstances, and, in the alternative, that their conduct

should be subject to qualified immunity as action which is not "clearly established" as a violation of the Fourth Amendment.  (Doc. 30).  Ms. Patrizi opposed the motion.  (Doc. 35).

This matter was referred to Magistrate Judge Kenneth S. McHargh.  On 31 March 2011, Judge McHargh issued a Report and Recommendation ("R&R") denying summary judgment.  (Doc. 42).  On 13 April 2011, the defendants submitted objections to this R&R.  (Doc. 43).  On 27 April 2011, Ms. Patrizi submitted her response to these objections.  (Doc. 44).  The matter is now ripe for review.

For the reasons discussed below, the Court will deny the defendants' motion for summary judgment.

### I.      BACKGROUND

On the evening of 9 December 2007, Ms. Patrizi arrived at a nightclub called ''Bounce'' in order to meet with several friends – Brandi Mills, Joe Baron, and Amy Lewis.  (Doc. 33, Patrizi dep., at 19-20, 26-27).  Meanwhile, Officers Cannole and Huff entered the club to investigate a possible assault.  (Doc. 35, PX B, Cleveland Police arrest report, at 3).  The alleged victim told the officers that the alleged assailant was in the group including Ms. Mills, Mr. Baron, and Ms. Lewis.  (Doc. 35, PX B, at 3-4; see also Doc. 33, Patrizi dep., at 37, 39).

The officers approached this group and asked its members to step into a quieter area, near one of the exits.  As the group was moving toward the exit, Ms. Mills signaled Ms. Patrizi to join them.  (Doc. 33, Patrizi dep., at 38, 40, 48; Doc. 35, PX A, Mills decl., at ¶ 3).  Ms. Patrizi joined the group. (Doc. 33, Patrizi dep., at 43).  Once

2

Officer Connole had the group gathered near the exit, he began questioning Ms. Mills.
Ms. Patrizi recalled that the officer was not abusive or intimidating, "just doing his job
asking questions" of Ms. Mills. (Doc. 33, Patrizi dep., at 45).  Ms. Patrizi testified:

> It was mostly, tell me what happened kind of questions. Then it,
> through his line of questioning, became more apparent to me that
> something had happened and that's when I first asked him, are you
> accusing – again I don't remember – specifically recall what I said –
> along the lines, are you accusing her of something? Is she a
> suspect? Things of that nature.

(Doc. 33, Patrizi dep., at 46-47; see also Doc. 35, PX A, Mills decl., at ¶ 6).

Ms. Patrizi testified that she questioned Officer Connole, although her
recollection as to what she said is unclear:

> Q. Do you recall identifying yourself as a lawyer while you were
> standing there?
>
> A. Yes.
>
> Q. At any point during the proceedings did Officer Connole ask you to
> desist or quit speaking while he was talking to Miss Mills and the others?
>
> A. No.
>
> Q. Do you recall telling Officer Connole she doesn't have to say
> anything to you?
>
> A. No.
>
> Q. If I understood you right, do you recall asking him, are you
> accusing her of something?
>
> A. Like I said, not necessarily specifically what I said, but I was trying
> to understand what he was – why he was bringing these people here,
> you know. What was the nature of – you know, what was underlying
> his questioning.

(Doc. 33, Patrizi dep., at 48).  Later in her deposition, Ms. Patrizi seemed to indicate
that she may have told the police that Ms. Mills did not have to cooperate.

3

A. . . . the questioning from the officer turned to more where it was
evident to me that Brandi [Mills] was not just being questioned about
a general incident, that it was a specific assault on Heather [Wallace],
that's again when I asked the officer, you know, is she in custody? Are
you, you know – if you're – if she's in custody, you know, she doesn't
have to – you know, you have to read her her rights at that point or
she doesn't have to continue to talk to you.

I mean, I guess I was trying at that point to see if it was a custodial
interview or a social encounter from the perspective of the officer.

(Doc. 33, Patrizi dep., at 49-50).

At his deposition, Officer Connole agreed that part of what Ms. Patrizi was trying

to figure out was whether Ms. Mills was in custody. (Doc. 32, Connole dep., at 50).

Officer Connole also testified as follows:

Q. Did any of the three people answer your questions before Miss
Patrizi was arrested?

A. They – I don't know how far I got before Miss Patrizi was walked
out, but they had started to and every time she would talk, she would
either prevent me from asking a question or she would stop them from
talking to me.

Q. Did she directly address the individuals and tell them not to talk to
you?

A. Yes.

Q. Did she directly address you and ask you any questions?

A. Yes.

Q. And best you can recall, what were the questions she asked you?

A. That she asked me do you consider my client a suspect? Why are
you questioning them? What are they being charged with? Stuff
along that line. That's probably the best I could do.

Q. What did she say to the three individuals?

4

> A. That they don't have to talk to me, that I have no reason to talk to them.

(Doc. 32, Connole dep., at 17-18).

Officer Connole's responses are corroborated by Ms. Mills who said that "[Patrizi] reminded me that I had the right to remain silent and that I did not have to respond to the officer's continued questions. I considered her statements to me to be legal advice." (Doc. 35, PX A, Mills decl., at ¶6).

However, despite Ms. Patrizi's statements and questions, Officer Huff testified that he never noticed Ms. Patrizi raise her voice during the questioning.  (Doc. 31, Huff dep., at 58).  As well, Ms. Mills stated that Ms. Patrizi never raised her voice when she was involved in the exchange with Officer Connole.  (Doc. 35, PX A, Mills decl., at ¶ 8).

Furthermore, Ms. Patrizi asserts that she was never asked to back away or otherwise let Officer Connole proceed with his questions.  She was simply arrested. (Doc. 35, at 4).  This, however, is disputed by the defendants.  Officer Huff testified that Officer Connole nodded to him, yelled his name, and told him to "get her out of here." (Doc. 31, Huff dep., at 60).  Regarding the arrest of Ms. Patrizi, Officer Huff testified as follows:

> Q. Up to that point had you observed her engage in acts yourself that you believed gave you probable cause to arrest her for obstructing official business?
>
> A. I had not, no.
>
> Q. What happened when your partner indicated to you you should get her out of here?
>
> A. To the best of my recollection, because obviously it was a long time, I advised her she had to leave. I grabbed her by the arm and took her outside the club.

5

Q. At that point did you know why you were doing that?

A. I was trying to separate her from the group so he could do what he needed to do.

Q. You advised her she had to leave, what did she say?

A. I believe she said she didn't have to leave.

Q. Did she resist your direction?

A. Absolutely.

Q. How did she resist?

A. You know, subtle things. Stiffening up, not walking with us, having to be pulled.

Q. She had to be pulled?

A. Yes. I'm not saying literally pulled, you know, escorted out. There is different versions –

Q. Did you cuff her before she left the building?

A. You know, I couldn't remember – it was either outside – I couldn't remember if it was outside or in the lobby at the time.

(Doc. 31, Huff dep., at 60-62).

Further, according to the arrest report, Ms. Patrizi "attempted to start pointing at [Huff] when [he] grabbed her arm and said you need to go outside while we finish our invest[igation]." (Doc. 35, PX B, arrest rpt., at 4).  Ms. Patrizi pulled away from Officer Huff, and said "I don't have to leave."  Id.  Officer Huff advised her she must leave now, and Ms. Patrizi swung her arm around at him and said "I don't have to go anywhere." Id.  The report continues that Officer Huff then advised Ms. Patrizi that she was under arrest, placed her in handcuffs and physically escorted her out of the door "while she

6

stiffened up and was stopping her walk."  Id.  Ms. Patrizi, however, disputes this series

of events, and refers to the security video camera which videotaped (without audio) a

portion of the incident.  (Doc. 35, at 1; see Doc. 4, DVD).  There is no evidence on the

video of Ms. Patrizi pointing her finger in Officer Connole's face (or Officer Huff's).

There is no evidence on the video of Ms. Patrizi pulling away from Officer Huff after he

seized her.  There is no evidence on the video of Ms. Patrizi swinging her arm at

Officer Huff.  There is no evidence on the video of Ms. Patrizi stiffening her walk, or

otherwise resisting while Huff walks her out the door.  (Doc. 4).

　　　After Officer Huff arrested Ms. Patrizi, she was charged with "obstructing official

business" under the City of Cleveland's Ordinance § 615.06.  (Doc. 1, compl., at ¶¶ 10-

11, 16).  However, the City of Cleveland Prosecutors' Office subsequently dismissed

those charges.


### II.　　SUMMARY JUDGMENT STANDARD

　　　Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986).  The moving party:

> always bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions
> of the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, which it
> believes demonstrate the absence of a genuine issue of
> material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").  Rather, Rule 56(e) "requires the nonmoving party to

8

go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).


   **III.    LAW AND ANALYSIS**

   The complaint alleges that Ms. Patrizi's arrest for obstructing official business was made without probable cause in violation of the 4th and 14th Amendments.  (Doc. 1, compl., at ¶¶ 1, 18, 21).  This federal claim arises under 28 U.S.C. § 1983, which requires a plaintiff to "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law."  Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006).

   The defendants contend that they had probable cause to arrest Ms. Patrizi and that, even if they did not, the doctrine of qualified immunity shields their actions from this §1983 claim.  See Graham v. Conner, 490 U.S. 386, 396 (1989); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pierson v. Ray, 386 U.S. 547 (1967) (establishing that police officers may claim qualified immunity from suits brought under § 1983.

9

**A. Question of Probable Cause to Arrest Ms. Patrizi**

The U.S. Constitution permits a police officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed an offense.  Estate of Dietrich v. Burrows, 167 F.3d 1007, 1010 (6th Cir. 1999) (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)).  Conversely, an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment.  Ingram v. City of Columbus, 185 F.3d 579, 592-593 (6th Cir. 1999).  "Probable cause" means that the facts and circumstances within the officer's knowledge are sufficient to warrant a reasonably prudent person to believe, in the circumstances shown, that the suspect has committed or is about to commit the offense.  Dietrich, 167 F.3d at 1010-1011.

In the present case, Ms. Patrizi argues that the defendants arrested her for obstructing official business without probable cause, in violation of the Fourth Amendment.  (Doc. 1, compl., at ¶¶ 1, 18, 21).  Although Ms. Patrizi was charged with "obstructing official business" under the City of Cleveland's Ordinance § 615.06, the parties agree that the ordinance is substantively identical to Ohio Rev. Code § 2921.31(A).  See, e.g., Doc. 35, at 10-11 (difference is gender-neutral phrasing).  State law has therefore been used to interpret the ordinance.  Id. (citing City of Cleveland v. Kristoff, No. 80086, 2002 WL 441584 (Ohio Ct. App. 2002)).

The elements of the offense of obstructing official business are: (1) No person, without privilege to do so; (2) with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within his official capacity; (3) shall do an act which hampers or impedes a public official in the performance of his lawful duties.

10

Kaylor v. Rankin, 356 F.Supp.2d 839, 845 (N.D. Ohio 2005) (citing Ohio Rev. Code §
2921.31(A)).

Courts have generally required an affirmative act for the offense of
obstructing official business.  State v. Grice, 180 Ohio App.3d 700, 703 (Ohio Ct. App.
2009).  An affirmative act is defined as any conduct, physical or verbal, that hampers or
impedes the officer in the performance of his or her duties.  State v. Wellman, 173 Ohio
App.3d 494, 499 (Ohio Ct. App. 2007).  There are no bright line rules for what hampers
or impedes an officer; thus, the court must analyze the defendant's "entire course of
conduct."  Id.

If a defendant's actions are verbal in nature, then the above analysis implicates
the First Amendment.  Citizens must be given "considerable latitude . . . to express their
views about the police and their activities."  Kaylor, 356 F.Supp.2d at 847.  At the same
time, if a defendant's speech transforms into verbal conduct, then this conduct can
constitutionally be criminalized.  See id.

In State v. Wellman, the defendant's behavior "crossed the line between fair
protest and actual obstruction" where the defendant prevented officers from talking to
an individual, not simply through asking questions, but by being belligerent and
argumentative.  Wellman, 173 Ohio App.3d at 499.  The defendant's conviction for
obstructing official business was affirmed because the court found that the defendant's
"entire course of conduct" impeded the officers from performing their official duties.  Id.
at 499.  In City of North Ridgeville v. Reichbaum, the defendant's speech transformed
into verbal conduct, where the defendant repeatedly interrupted and shouted at the
officer attempting to question the defendant's stepdaughter, repeatedly answered the

11

questions directed at the stepdaughter, and ignored the officer's instructions to desist. City of North Ridgeville v. Reichbaum, 112 Ohio App.3d 79, 80-81 (Ohio Ct. App.1996). The court found the defendant's behavior constituted multiple affirmative acts which supported his conviction for obstructing official business. Id. The shouting, yelling, repeated interruptions, and refusal to desist in this case, like the belligerence and argumentativeness in Wellman, were sufficient viewing the defendant's entire course of conduct to impede the officer in the performance of his lawful duties.

In the present case, construing the evidence, as well as any inferences to be drawn from it, in the light most favorable to the non-movant, Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir. 1990), Ms. Patrizi's speech never transformed into verbal conduct and her behavior never constituted an affirmative act. Ms. Patrizi did not conduct herself in a belligerent or argumentative manner as in Wellman. Nor did she shout or refuse to desist in her course of conduct as in Reichbaum. Viewing Ms. Patrizi's entire course of conduct, she was merely advising her friends of their constitutional rights, while at the same time attempting to ascertain from the police if Ms. Mills was in custody. Ms. Patrizi only joined the group being questioned because Ms. Mills signaled her to join. Her friends never instructed Ms. Patrizi to leave; in fact, they considered Ms. Patrizi's statements to be legal advice. Each one of Ms. Patrizi's actions was measured and reasonable. Furthermore, the security video camera at "Bounce" does not show Ms. Patrizi physically interfering with the officers' investigation. (Doc. 4). There are no indications that she hampered or impeded the defendants' investigation.

Ms. Patrizi's behavior was similar to the defendant's behavior in Kristoff, a case in

12

which no obstructive action was found.  <u>City of Cleveland v. Kristoff</u>, No. 80086, 2002 WL 441584 (Ohio Ct. App. 2002).  There, the defendant encouraged his friend to refuse to answer the detectives' questions until they provided identification establishing that they were, in fact, detectives.  <u>Id</u>. at 1.  Like the defendant in <u>Kristoff</u>, Ms. Patrizi simply advised and encouraged her friends to remain silent.  Like the defendant's comments in <u>Kristoff</u>, Ms. Patrizi's comments may have disturbed the officers, but there is no evidence that they "were spoken so boisterously and in such a manner as to prevent the [officers] from carrying out their duties."  <u>Id</u>. at 2.  Any contention that Ms. Patrizi prevented her friends from getting a word in edgewise can be countered by the favorable inference that her friends were simply heeding her lawyerly advice to remain silent.

Furthermore, the fact that Officer Connole strained to hear the suspects because of the noisy club and Ms. Patrizi's statements does not illustrate the existence of obstructive conduct.  The defendants cannot attribute the noisy club atmosphere to Ms. Patrizi.  Moreover, the officers could have spoken with Ms. Patrizi's friends outside, and even if Ms. Patrizi followed them, the situation would have been similar to <u>Kristoff</u>.  Ms. Patrizi still would have been a citizen encouraging her friends to refuse to answer police questions.

The defendants would have the Court rely on <u>King v. Ambs</u>, a case which involved an arrest for obstruction under a Michigan township ordinance.  (Doc. 36, at 10-12, citing <u>King v. Ambs</u>, 519 F.3d 607 (6th Cir. 2008)).  In that case, the defendant repeatedly urged his friend to ignore an officer's questions.  <u>Id.</u> at 610.  Even after the defendant's friend shut a door in his face to go speak with the officer, and after the

13

officer commanded the defendant to stop interfering with the investigation, the defendant continued interrupting.  Id.  The court ruled that the arrest was not violative of the First amendment because the defendant's "act of speaking, by virtue of its time and manner, plainly obstructed ongoing police activity involving a third party."  Id. at 614.

The defendants' attempt to analogize the present case to King fails.  First, unlike the defendant's friend in King, Ms. Patrizi's friends never made an overt attempt to speak with the officers or signaled Ms. Patrizi to stop talking.  Second, unlike the officer in King, the officers never told Ms. Patrizi that she was interrupting, nor did they instruct her to desist.  Unlike the defendant's conduct in King, Ms. Patrizi's speech never transformed into verbal conduct, and she never obstructed official police business.

Thus, the facts and circumstances known to the officers could not lead a prudent officer to believe that Ms. Patrizi had committed a violation of the City of Cleveland ordinance.  It was not objectively reasonable for the officers to believe they had probable cause, and the evidence before the Court does not support a finding of probable cause for an arrest for obstructing official business.

The Court finds that there is not "only one reasonable determination possible" on the existence of probable cause, thus it is properly a question for the jury.  Everson v. Leis, 556 F.3d 484, 499 (6th Cir. 2009).

## B. The Right is Clearly Established

The Court must next consider whether the officers are entitled to qualified immunity - whether the constitutional right at issue is clearly established.  Saucier v. Katz, 533 U.S. 194 (2001).  "[T]he right allegedly violated must be defined at the

14

appropriate level of specificity before a court can determine if it was clearly established."
Wilson v. Layne, 526 U.S. 603, 615 (1999).  "The contours of the right must be
sufficiently clear that a reasonable official would understand that what he [or she] is
doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "The
relevant, dispositive inquiry in determining whether a right is clearly established is
whether it would be clear to a reasonable officer that his [or her] conduct was unlawful
in the situation he [or she] confronted."  Saucier, 533 U.S. at 202.

Using the doctrinal analysis above, Ms. Patrizi had a clearly established right in
this case. The defendants claim that Ms. Patrizi's arrest was a reasonable mistake
based upon "the indefinite contours of the affirmative act requirement."  (Doc. 43 at 12-
13).  Although there are no bright lines for what constitutes obstructive conduct under
statute or case law, this does not mean it was unclear that Ms. Patrizi's behavior did not
constitute obstructive conduct.  She exhibited none of the hallmarks of obstructive
conduct such as the belligerence and argumentativeness of Wellman or the shouting
and refusal to desist of Reichbaum.  Furthermore, viewing her conduct in its entirety,
she identified herself as a lawyer, advised her friends of their constitutional rights, and
asked the police if her friends were in custody.  Her actions were eminently reasonable
and never approached what could be considered obstructive conduct.  Despite the
arguably ambiguous affirmative act test, her arrest was unreasonable.

Although probable cause is an objective standard, the subjective beliefs of a
police officer concerning the existence of probable cause are surely relevant to both the
probable cause determination and the qualified immunity analysis.  Officer Huff testified
that he did not observe Ms. Patrizi engage in acts giving him probable cause to arrest

15

her during the relevant time frame. (Doc. 31, Huff dep., at 60-62).  As far as Officer

Huff's own personal subjective determination is concerned, there is no ambiguity and

this was not a close call.  Furthermore, Officer Connole testified that he never intended

to arrest Ms. Patrizi during the relevant time frame. (Doc. 32, Connole dep., at 53-54).

Although an officer can choose not to arrest a suspect even if he or she is

constitutionally permitted, Officer Connole's decision suggests he did not believe there

was probable cause.  Taken together, these facts show that the right is sufficiently clear

so that a reasonable officer would, or should have, understood the constitutional right at

issue.

It would have been clear to a reasonable officer that arresting Ms. Patrizi was

unlawful.  <u>Saucier</u>, 533 U.S. at 202.  The Court finds that Ms. Patrizi has carried her

burden to show that the defendants are not entitled to qualified immunity.  The

defendants' Motion for Summary Judgment will be denied.


**IV.    CONCLUSION**

For the reasons set forth above, this Court denies the defendants' Motion for

Summary Judgment and request for qualified immunity.


IT IS SO ORDERED.


                     /s/Lesley Wells_____
                     UNITED STATES DISTRICT JUDGE